[Cite as *Huntington Natl. Bank v. Daly*, 2025-Ohio-402.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

The Huntington National Bank                    Court of Appeals No.    L-24-1011

     Appellant

                                Trial Court No.  CI0201904367

v.

Dennis J. Daly, et al.

                                **DECISION AND JUDGMENT**

     Appellees

                                Decided:  February 7, 2025

* * * * *

Eric T. Deighton, for appellant.

James W. Sandy and Kevin A. Buryanek,
for appellee, Bank of America, N.A.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant, The Huntington National Bank ("Huntington"), appeals from an order vacating an entry confirming sale and ordering distribution that was granted by the Lucas County Court of Common Pleas. For the reasons that follow, we reverse the judgment of the trial court.

## Statement of the Case and Facts

### A. BANA's Loan and Interest on the Property

{¶ 2} On March 23, 2016, Dennis Daly and his wife, Karen Daly, (collectively, the "Dalys") executed a note (the "Note") with appellee Bank of America, N.A. ("BANA") in the original amount of $84,968.00. That same day, the Dalys executed a mortgage (the "Mortgage") and granted BANA a security interest in the Property. The Mortgage was recorded with the Lucas County Recorder's Office on April 8, 2016. Thereafter, Huntington, which had a previously-recorded mortgage on the Property -- in the original amount of $70,000 -- entered into a Subordination Agreement wherein it agreed to subordinate its interest in the Property in favor of BANA.

### B. The Foreclosure

{¶ 3} In November 2019, Huntington filed a Complaint for Money and Foreclosure (the "Foreclosure"). BANA was named as a defendant because it held a mortgaged interest in the Property that, pursuant to the Subordination Agreement, had priority over Huntington's interest. BANA subsequently answered the Complaint and indicated that there was due and owing to it the unpaid principal balance of $79,757.65 plus interest at a rate of 4.5% per annum from November 1, 2019. Because BANA held the senior interest in the Property, BANA further requested that any sale be subject to its Mortgage.

{¶ 4} Huntington then moved for default judgment against various non-answering parties. On January 23, 2020, the trial court issued a Judgment and Decree of Foreclosure (the First Foreclosure Decree). The First Foreclosure Decree expressly recognized

2.

BANA's priority interest in the Property and, further, made clear that any sale was to be subject to the BANA Mortgage. Following discovery of a defect in the entry[1], the trial court completely vacated the First Foreclosure Decree.

{¶ 5} On or about September 22, 2021, the trial court issued a second Judgment Entry and Decree of Foreclosure (the Second Foreclosure Decree). Like the First Foreclosure Decree, the Second Foreclosure Decree recognized BANA's priority interest in the Property and ordered that the Property be sold subject to the BANA mortgage. However, the Second Foreclosure Decree also directed the Sheriff or private selling officer to "sell said premises as upon execution and according to law, *free and clear of the interests of all parties to this action.*" (Emphasis added.)

{¶ 6} Despite this language indicating that BANA's mortgage would be eliminated and released through foreclosure of the Property, the Second Foreclosure Decree was not appealed by BANA.

{¶ 7} Nearly eight months after the Second Foreclosure Decree was issued, and after no effort was made by BANA to amend, clarify, or object to the decree's mandate that the property be sold free and clear of all interests of all parties to the action, an order of sale by a private selling officer was issued. The order of sale included no mention of the Property being sold subject to BANA's Mortgage.

{¶ 8} The Property was sold, and on September 20, 2022, a final and appealable Judgment Entry Confirming Sale and Ordering Distribution of Sale Proceeds

---

[1] This defect was unrelated to issues raised in the current appeal.

3.

("Confirmation Entry") was filed. The Confirmation Entry, prepared by counsel for Huntington and signed and docketed by the trial court, provided that $66,777.33 of sale proceeds would be distributed to Huntington and that another $87,349.98 of sale proceeds would be held by the clerk of courts pending further order and that BANA's mortgage was ordered released. The signed and docketed Confirmation Entry was emailed to counsel for BANA on September 20, 2022, by the clerk of courts. BANA never appealed this entry.

{¶ 9} Dennis Daly then filed a motion seeking distribution of the $87,349.98 being held by the clerk of courts from the sale of the Property. BANA did not respond to or object in any way to Daly's motion. On or about January 25, 2023, the trial court granted the motion. A copy of the January 25, 2023 order distributing the remaining proceeds to Daly was served by the trial court upon BANA's counsel by email on January 26, 2023.

## C. The Motion to Vacate

{¶ 10} On December 28, 2023, some 15 months after the confirmation order was issued, BANA filed a "Motion to Partially Vacate Confirmation Entry Regarding Release of Bank of America's Mortgage or as to Proceeds Paid to Plaintiff." In this motion, BANA sought one of two forms of relief: either that BANA's mortgage be ordered reinstated on the Property, or that Huntington be ordered to return to the court the sale proceeds that were disbursed to it and that those sale proceeds be disbursed to BANA to apply as a partial payment on its mortgage lien interest. BANA's motion did not request any relief as to the $87,349.98 of proceeds that were distributed to Mr. Daly.

4.

{¶ 11} As grounds for relief, Bana argued first that the Confirmation Entry was void because it exceeded the relief granted in the Second Foreclosure Decree since it improperly released BANA's Mortgage. Alternatively, BANA argued for relief pursuant to Civ.R. 60(B)(5), which allows a party to be relieved from the "unjust operation of judgment." BANA argued that it had a meritorious claim, to wit, a first lien Mortgage on the Property and an explicit finding by the Trial Court that any sale should be subject to its Mortgage. In addition, BANA argued that its motion to vacate was brought within a reasonable time, noting that none of its "pre-sale documents" were served upon its counsel. Notably, BANA never denied receipt of the docketed Confirmation Entry that was emailed to its counsel on September 20, 2022. Nor did it deny having received a copy of the Second Foreclosure Decree entered almost exactly a year earlier, on September 22, 2021.

{¶ 12} On January 4, 2024, only four business days after BANA's motion was filed, the trial court issued its Order Vacating the Entry Confirming Sale and Ordering Distribution, which ordered, in the alternative, *either* that BANA's Mortgage be ordered reinstated on the Property *or* that Huntington return the $66,777.33 that was disbursed to it to the Clerk of Courts and that those sale proceeds be disbursed to BANA.

{¶ 13} On January 17, 2024, Huntington filed a timely notice of appeal.

**Assignments of Error**

{¶ 14} On appeal, appellant asserts the following assignments of error:

I.     The trial court abused its discretion in granting 60(B) relief where Bank of America did not timely file its motion.

II.   The trial court abused its discretion in granting 60(B) relief where it no longer had jurisdiction over the subject matter of the case.

III.  The trial court abused its discretion by issuing an indefinite and ambiguous order which was subject to dual interpretations.

## Law and Analysis

### Huntington did not waive its arguments on appeal by failing to raise them in the trial court.

{¶ 15} Before considering the merits of the appeal, it is necessary to address BANA's argument that all the arguments Huntington raises on appeal have been waived because it failed to first raise them in the trial court. *See State v. Wintermeyer*, 2019-Ohio-5156, ¶ 10 ("A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below.").

{¶ 16} In this case, where counsel for Huntington was mailed a service copy of BANA's Motion to Vacate the Confirmation Entry on December 28, 2023, and then the Order Vacating Confirmation Entry was docketed three days after New Year's Day, on January 4, 2024, it is clear that Huntington was not granted an opportunity to respond. This violates fundamental due process. *See Raben Tire Co., Inc. v. K&G Contracting Servs., Inc.*, 2009-Ohio-6526, ¶ 14, citing *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950) (where appellant was never granted any opportunity to respond to motion filed by appellee, fundamental due process was violated). Accordingly, we decline to find that Huntington's arguments have been waived on appeal.

6.

**A Civ.R. 60(B) motion cannot be used as a substitute for a timely appeal.**

{¶ 17} "In foreclosure actions, two judgments are appealable: the order of foreclosure and the confirmation of sale." *Treasurer of Cuyahoga Cty. v. Holloway*, 2022-Ohio-301, ¶ 15 (8th Dist.), citing *CitiMortgage, Inc. v. Roznowski*, 2014-Ohio-1984, ¶ 39. "Once the property is sold in foreclosure or forfeiture, failure to timely appeal confirmation of the sale limits the former owner's remedies because the law protects the property rights of the third-party purchaser, who retains title to the property." *Id.,* citing *Blisswood Village Home Owners Assn. v. Euclid Community Reinvestment, L.L.C.,* 2018-Ohio-1091, ¶ 16. (Additional citation omitted.)

{¶ 18} "In order to prevail on a motion for relief from judgment, 'the moving party must demonstrate that he or she (1) has a meritorious defense or claim to present if the relief is granted, (2) is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) has made the motion within a reasonable time unless the motion is based upon Civ.R. 60(B)(1), (2), or (3), in which case it must be made not more than one year after the judgment.'" *LaCourse v. LaCourse*, 2023-Ohio-972, ¶ 20 (6th Dist.), quoting *Oullette v. Oullette,* 2020-Ohio-705, ¶ 34 (6th Dist). "A party seeking relief under Civ.R. 60(B) is required to allege 'operative facts' that support the claim[.]" *Henry Cty. Bank v. Dudley,* 2022-Ohio-4192, ¶ 13 (6th Dist.), citing *Treasury of Lucas Cty. v. Mt. Airy Investments, Ltd.*, 2019-Ohio-3932, ¶ 24 (6th Dist.). "We review a determination under Civ.R. 60(B) for an abuse of discretion." *Id.* "An 'abuse of

7.

discretion' requires a finding of more than an error of judgment and implies the trial court acted unreasonably, arbitrarily, or unconsciably." *Id.* at ¶ 35.

{¶ 19} Here, BANA asserts that its meritorious defense is that it holds a first lien mortgage on real property and that it is entitled to relief under Civ.R. 60(B)(5), the catch-all provision reflecting the inherent power of a court to relieve a person from the unjust operation of a judgment. Specifically, BANA complains that "despite the Trial Court's explicit finding that any sale of the Property was to be subject to BANA's Mortgage, Huntington sold the Property free and clear of BANA's Mortgage," and "then exacerbated the harm to BANA by not distributing a penny of the excess proceeds to it."

{¶ 20} As for the timeliness of BANA's motion, BANA asserts that there is no time limit for seeking relief under Civ.R. 60(B)(5), and that its having sought relief from judgment around 15 months after the Confirmation Order was entered was "clearly within a reasonable time."

{¶ 21} Here, all of BANA's arguments were available, and could have been raised, both following the order of foreclosure and following the confirmation of sale. "It is well established that 'Civ.R. 60(B) is not available as a substitute for a timely appeal…nor can the rule be used to circumvent or extend the time requirements for filing an appeal.'" *Kraus v. Kraus*, 2016-Ohio-972, ¶ 38 (6th Dist.), quoting *Blasco v. Mislik*, 69 Ohio St.2d 684, 686 (1982); *see also Doe v. Trumbull Cty. Children Services Bd.,* 28 Ohio St.3d 128 (1986), paragraph two of the syllabus. Accordingly, arguments that could have been made on direct appeal may not be considered through a Civ.R. 60(B) motion.

8.

*See Arp-Hall v. Lind*, 2003-Ohio-7252, ¶ 12. Because BANA's arguments could have been made on direct appeal, the trial court abused its discretion in granting BANA's Civ.R. 60(B) motion.

{¶ 22} BANA asserts that there are sufficient operative facts in this case to establish an exception to the general rule that Civ.R.60(B) cannot be utilized as a substitute for a timely appeal. Specifically, BANA argues that its counsel "never received notice of any of the pre-sale filings that would have alerted it to the attempt to sell the Property free and clear of BANA's Mortgage, notwithstanding the prior decisions to the contrary."

{¶ 23} Although there does exist authority stating that "Civ.R. 60(B) is the proper avenue to attack a judgment when the claim is a party did not receive notice," *Summers v. Lancia Nursing Homes, Inc.,* 2016-Ohio-7935 (7th Dist.), ¶ 27, in considering BANA's argument, we note that BANA never claimed that it did not receive the Confirmation Entry or subsequent filings. BANA claimed only that *pre-sale* documents were not served on BANA and that a service copy of the Motion to Confirm Private Selling Officer's Sale, filed on September 13, 2022, was sent directly to BANA instead of to its counsel. Importantly, BANA never denied that its counsel was sent a proposed copy of the Confirmation Entry before it was signed by the court and docketed on September 20, 2022, or that it was not served a copy of the docketed Confirmation entry itself. In fact, the court docket makes clear that a copy was emailed to BANA's counsel on September 20, 2022, by the clerk of courts. Likewise, BANA makes no assertion that it was not

9.

served a copy of the September 22, 2021 judgment entry of foreclosure, which the court docket shows was emailed to Bana's counsel on September 22, 2021. Accordingly, BANA has failed to provide sufficient operative facts to establish an exception to the general rule that Civ.R. 60(B) cannot be used as a substitute for a timely appeal.

**The trial court's confirmation entry was not void for lack of jurisdiction.**

{¶ 24} BANA additionally argues that the trial court's Confirmation Entry was void because it exceeded the jurisdictional limits of R.C. 2329.20 when it ordered the release BANA's senior mortgage. *See Home Fed. S.&L. Assn. of Niles v. Keck,* 2016-Ohio-651, ¶ 40 (7th Dist.) (a movant need not satisfy the requirements for vacating a judgment under Civ.R. 60(B) where the judgment sought to be vacated is void as opposed to voidable).

{¶ 25} R.C. 2329.20, which governs the price at which mortgaged property may be sold in a foreclosure sale. provides:

> In all cases in which a junior mortgage or other junior lien is sought to be enforced against real estate by an order, judgment, or decree of court, subject to a prior lien thereon, and such prior lien, and the claims or obligations secured thereby, are unaffected by such order, judgment or decree, the court making such order, judgment, or decree, may determine the minimum amount for which such real estate may be sold. In such a case, the minimum amount shall not be less than two-thirds of the difference between the appraised value of the real estate as determined in that section, and the amount remaining unpaid on the claims or obligations secured by such prior lien.

10.

According to BANA, "[t]he plain language and history of R.C. § 2329.20, as well as common practice, make clear that a trial court's jurisdiction to order real property sold after a foreclosure judgment has been entered is limited and prescribed by statute." BANA goes on to argue: "Despite the statutory limitations on the Trial Court's jurisdiction to confirm the sale of the Property – and despite BANA previously demanding the sale be subject to its Mortgage and the Trial Court ordering the same, the Trial Court's Confirmation Order, prepared by Huntington's counsel, exceeded the limits of R.C. § 2329.20 when it ordered BANA's senior mortgage to be released…The Confirmation order was therefore void and BANA could challenge the same pursuant to the Trial Court's inherent authority to vacate void judgments."

{¶ 26} There is no question that "[a] court has the inherent authority to vacate its own void judgments." *Lingo v. State*, 2014-Ohio-1052, ¶ 48, citing *Patton v. Diemer*, 35 Ohio St.3d 68 (1988), paragraph four of the syllabus. And it is also true that "the issue of subject-matter jurisdiction can be challenged at any time and that a court's lack of subject-matter jurisdiction renders that court's judgment void ab initio." *Bank of Am., N.A. v. Kuchta*, 2014-Ohio-4275, ¶ 17, citing *Pratts v. Hurley*, 2004-Ohio-1980, ¶ 11.

{¶ 27} However, "[s]ubject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Kuchta* at ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87 (1972) "A court's subject-matter jurisdiction is determined without regard to the rights of the individual parties involved in a particular case." *Id.*, citing *State ex rel. Tubbs Jones v. Suster*, 84 Ohio St.3d 70, 75 (1998). (Additional citation omitted.)

11.

{¶ 28} A court's jurisdiction over a particular case, on the other hand, "refers to the court's authority to proceed or rule on a case that is within the court's subject-matter jurisdiction." *Id.*, citing *Pratts* at ¶ 12. "This latter jurisdictional category involves consideration of the rights of the parties." *Id.* "If a court possesses subject-matter jurisdiction, any error in the invocation or exercise of jurisdiction over a particular case causes a judgment to be voidable rather than void." *Id.*, citing *Pratts* at ¶ 12.

{¶ 29} It is well established that "actions in foreclosure are within the subject-matter jurisdiction of a court of common pleas." *Id.* at ¶ 20, citing *Robinson v. Williams,* 62 Ohio St. 401, 408 (1990). Thus, the jurisdiction that BANA seeks to challenge is not subject matter jurisdiction, but rather jurisdiction over this particular case, and any jurisdictional defect in the Confirmation Entry would render the entry voidable rather than void.

{¶ 30} "'Generally, a voidable judgment may be set aside only if successfully challenged on direct appeal.'" *In re K.K.*, 2022-Ohio-3888, ¶ 48, quoting *State v. Harper*, 2020-Ohio-2913, ¶ 26, citing *State v. Payne,* 2007-Ohio-4642, ¶ 28. And "'[u]nless it is vacated on appeal, a voidable judgment has the force of a valid legal judgment, regardless of whether it is right or wrong.'" *Id.*, quoting *State v. Henderson*, 2020-Ohio-4784, ¶ 17. (Additional citation omitted.)

{¶ 31} For the foregoing reasons, Huntington's first assignment of error is found well-taken. In light of our resolution of the first assignment of error, the remaining assignments of error are moot.

12.

**Conclusion**

{¶ 32} The trial court's January 4, 2024 Order Vacating Entry Confirming Sale and Ordering Distribution is reversed and vacated. Appellee is ordered to pay the costs of appeal pursuant to App.R, 24.

Judgment reversed
and vacated.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                            _____

                                                                      JUDGE

Gene A. Zmuda, J.

                                             _____

Charles E. Sulek, P.J.                                         JUDGE
CONCUR.

                                             _____
                                                                    JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.